IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL L. PEEVY                                                              PLAINTIFF

        v.                    Civil No. 12-2043

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Michael Peevy, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.   Procedural Background:

The Plaintiff filed his applications for DIB and SSI on March 3, 2010, alleging an onset date of September 30, 2007, due to back pain, carpal tunnel syndrome ("CTS") in his right hand, heel and ankle pain, and blurred vision in his left eye due to eye surgery to remove a pterygium.  Tr. 10, 133, 135, 198, 203, 205, 212-213, 224, 227.  His claims were denied both initially and upon reconsideration.  An administrative hearing was then held on November 4, 2010. Tr. 22-69.  Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

At the time of the hearing, Plaintiff was 50 years of age and possessed an eleventh grade education. Tr. 15, 26, 133, 199. He had past relevant work ("PRW") as a security guard, fast food cook, grocery store worker, and drilling holes for light poles. Tr. 28-36, 179-188, 200.

On October 22, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's degenerative disk disease ("DDD") of the lumbar spine with radiculopathy, right heel pain, right CTS, status post surgery bilateral pterygium left greater than right, and history of hernia surgery did not meet or equal any Appendix 1 listing. Tr. 12-13. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no overhead work, work requiring excellent vision, or work requiring rapid, repetitive flexion-extension of his right wrist. Tr. 13-15. With the assistance of a vocational expert, the ALJ then found that Plaintiff could perform work as a surveillance system monitor, escort vehicle driver, and assembler. Tr. 15-16. However, beginning on September 1, 2010, when Plaintiff turned 50 and his age category changed, the ALJ concluded there were not a significant number of jobs in the national economy that he could perform, rendering his disabled as of this date. Tr .16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 10, 2012. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 10, 12.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5)

3

whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III.     Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Records reveal that Plaintiff suffered from DDD of the lumbar spine with radiculopathy, resulting from a work related injury in November 2006 involving an auger. Tr. 311. We note that the record contains only the RFC assessment of a non-examining, consultative doctor. *See Jenkins v. Apfel*,

4

196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Although Plaintiff did undergo a general physical exam with Dr. Hoang on June 9, 2010, he failed to comment on Plaintiff's limitations, aside from stating that he would have "moderate physical limitations for work." Tr. 249-253. However, Dr. Hoang did report a normal range of motion in all areas, a negative straight leg raise test bilaterally, no muscle atrophy or weakness, no sensory abnormalities or gait/coordination difficulties, the ability to walk on his heels and toes, and the ability to squat and arise from a squatting position.

On June 16, 2010, Plaintiff reported an exacerbation of his back pain, at which time Dr. John Hundley noted tenderness to the lumbosacral spine on palpation of the spinous process at the L1 and L3 levels, pain elicited by active flexion and extension, a positive straight leg raise test on the right, an abnormal gait with a limp on the right, and a wide based ataxic gait. Dr. Hundley prescribed Flexeril, Lortab, and a Medrol Dosepak.

In September 2010, Plaintiff was referred to Dr. Arthur Johnson, a neurosurgeon, who assessed him with right lumbar radiculopathy. Tr. 301-303. Although Plaintiff's exact physical limitations are not evident from the record, Dr. Johnson noted that Plaintiff exhibited an abnormal gait favoring his left leg, decreased flexion and extension of the lumbar torso, decreased sensation to pinprick and vibratory along the right lateral thigh and right posterior calf, positive right and left straight leg raising tests, pain on palpation of the lumbar spine, and was unable to walk on his heels and toes. Tr. 302. He also voiced his belief that Plaintiff's impairments would preclude him from lifting, pushing, or pulling[2].

An MRI of Plaintiff's lumbar spine conducted on October 6, 2010, revealed DDD at L2-3, L3-4, L4-5, and L5-S1 with mild facet hypertrophy, a central disk bulge and foraminal narrowing secondary

---

[2]While we note that Dr. Johnson refused to complete Plaintiff's disability paperwork during Plaintiff's appointment, he was advised that he could drop said paperwork off at the front desk and go through the proper channels to have it completed. The record does not, however, reveal what those channels were or whether Plaintiff left the paperwork at the front desk.

to facet hypertrophy at the L4-5 level, a central left disk bulge with mild bilateral foraminal narrowing secondary to posterior element hypertrophy at the L5-S1 level, and a sclerotic inferior endplate at the L5 level. Tr. 298-300. While Plaintiff did report some resolution of his radiculopathy via the use of a Medrol Dosepak, it appears that his lower back pain continued. Plaintiff was referred to Dr. Fisher for epidural steroid injections, and was given a prescription for Lortab. Dr. Johnson opined that a disckogram would be the next step, if the injections were unsuccessful.

Given that it appears that Plaintiff experienced an exacerbation of his back pain in June 2010,, we believe that remand in necessary to allow the ALJ to reevaluate the record. On remand, the ALJ is ordered to forward RFC assessments to Doctors Hundley and Johnson, asking them to assess Plaintiff's ability to perform work-related activities prior to September 2010. They should also be asked to opine as to the onset date of any limitations they assign Plaintiff. If assessments can not be obtained from Plaintiff's treating doctors, then the ALJ will order a consultative orthopedic evaluation. Plaintiff's medical records should be forward to the consultant and a physical examination should be conducted to determine Plaintiff's RFC prior to September 2010. Again, the doctor should be asked to opine as to the onset date of any limitations he or she imposes.

We also note that the ALJ determined that Plaintiff was disabled as of September 2010 because Plaintiff turned 50 on September 1, 2010, classifying him under the regulations as an individual closely approaching advanced age. Tr. 26. However, we also note that under the regulations, the age categories are not applied mechanically in a borderline situation. 20 C.F.R. § 404.1563(b). Instead, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the agency] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." *Id*. Here, it appears that Plaintiff's condition worsened in June 2010, a mere three months prior to his 50th birthday. *See Phillips v. Astrue*, 671 F.3d 699, 703-704 (8th Cir. 2012). We

6

can find nothing, aside from Plaintiff celebrating a birthday, that occurred between June 2010 and September 2010 to explain the ALJ's conclusion that Plaintiff was disabled as of September 2010. As such, we believe that this constitutes a case of borderline age categorization that must be evaluated on remand.

V.     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 19th day of February 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE